```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF OREGON
```

C. GORDON DILLARD,              )    CV 06-3095-PA
                                )
            Plaintiff,          )    **OPINION AND ORDER**
                                )
    v.                          )
                                )
MICHAEL SANCHEZ, et al.,        )
                                )
            Defendants.         )

**PANNER, Judge.**

Plaintiff Gordon Dillard brings this action, *pro se*, against defendants Michael Sanchez, Jeffrey Gaunt, Jim Brissette, the City of Grants Pass and the city's Police Department, and the Courier Publishing Company, publisher of the Grants Pass Courier newspaper. Defendants Sanchez and the Courier Publishing Company have moved to dismiss all claims against them.

## Legal Standards

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). At this stage of the proceedings, the court's task is not to decide whether there is any evidence to support the allegations in the complaint, or whether the plaintiff ultimately will prevail, but whether he cannot possibly prevail even if the allegations in the complaint are assumed to be true and are viewed in the light most favorable to the

Page 1 -- OPINION AND ORDER

plaintiff. <u>Cassettari v. County of Nevada</u>, 824 F.2d 735, 737 (9th Cir. 1987). A motion to dismiss for failure to state a claim will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Gibson v. United States</u>, 781 F.2d 1334, 1337 (9th Cir. 1986).

## Background

The Complaint alleges that Plaintiff Dillard owned a hotel, restaurant and bar in Grants Pass, Oregon. Defendant Gaunt, a Grants Pass police officer, allegedly demanded that Dillard stop renting rooms to low income people, raise the room rates, eliminate weekly rentals, require credit cards from all customers, and take other steps aimed at preventing individuals who reside in the area from renting a room. Gaunt allegedly warned that if Dillard didn't comply, Gaunt would find an excuse to shut down the hotel.

Dillard says he refused to comply. Gaunt then allegedly tried to pressure several teenage girls into saying Dillard had offered them money for sex. Gaunt also allegedly offered to drop drug charges against the girls if they gave false testimony against Dillard. Gaunt allegedly wrote false accounts of the girls' statements, and told one he intended to use the statement to shut down Dillard's hotel.

The Complaint further alleges that defendant Brissette, a Grants Pass police officer, obtained a search warrant for Dillard's home, business and automobile by furnishing information Brissette knew, or should have known, was false. Dillard also alleges illegal searches, and seizures exceeding the scope of the search warrant.

Page 2 -- OPINION AND ORDER

Dillard contends the police chief of Grants Pass arranged for the Grants Pass Daily Courier newspaper to be given a list of items allegedly found during an illegal search of Dillard's property. Dillard contends the newspaper and a radio station ran stories, based on information provided by the police, stating Dillard was implicated in drug and prostitution rings and was a pimp. The allegations were republished by other media outlets. The Grants Pass police department allegedly circulated posters stating Dillard was wanted for rape and drug crimes, and extremely dangerous.

The Grants Pass Courier newspaper published a story stating Dillard admitted having sex with an underage girl. Dillard denied it and demanded a retraction. Instead, Dillard says, the paper ran a story repeating the allegations, along with statements by defendant Sanchez, a deputy district attorney.

The Complaint alleges that Dillard was then indicted for rape and prostitution, but acquitted. However, Dillard claims, defendants Sanchez and Brissette then jailed one girl and warned she would not be released until she agreed to testify falsely against Dillard. After weeks in jail, she agreed. Sanchez and Brissette then allegedly had Dillard arrested on new false charges. Dillard claims Sanchez and Brissette withheld, from the defense, police reports showing the girl repeatedly denied the allegations regarding Dillard. Dillard also contends the state court refused to appoint an attorney to represent him, and he was forced to represent himself at trial. This time, Dillard says, he was acquitted on some counts, but convicted on others. He states the conviction is presently on appeal.

/ / / /

Dillard also claims he was told, by an unspecified person, that the police intend to murder him. He also complains that his request to relocate to Medford, Oregon, was denied by his probation officer.

Dillard seeks $17 million in compensatory damages, and $34 million in punitive damages. Dillard also wants this court to offer to assume supervision of his "parole," apparently so Dillard can relocate from Grants Pass to Medford.

## Discussion

### *Motion to Dismiss by Defendant Sanchez*

#### A. Prosecutorial Immunity

Sanchez contends he has absolute immunity from all claims made against him in this action because those allegations concern actions he performed, or omissions, "by Defendant within the course and scope of his employment as a prosecuting/district attorney." Sanchez overstates the scope of prosecutorial immunity.

Absolute immunity from liability under 42 U.S.C. § 1983 applies even to acts done in bad faith and with improper motive. For that reason, the Supreme Court has been "quite sparing in its recognition of claims to absolute immunity." Forrester v. White, 484 U.S. 212, 224 (1988). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns v. Reed, 500 U.S. 478, 486-87 (1991). The official seeking absolute immunity bears the burden of demonstrating it is warranted. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 n.4 (1993).

A prosecutor is entitled to absolute immunity from claims for damages under § 1983 for conduct "intimately associated with

the judicial phase of the criminal process," <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976), that occurs in the course of his role as an advocate for the State, <u>Buckley v. Fitzimmons</u>, 509 U.S. 259, 273 (1993).

Not everything a prosecutor does is protected by absolute immunity. <u>See</u> <u>Milstein v. Cooley</u>, 257 F.3d 1004 (9th Cir. 2001). Generally, acts associated with initiating and conducting a prosecution, and acting as an advocate for the state, are within the scope of prosecutorial immunity. <u>Id.</u> Absolute immunity also attaches to decisions not to prosecute particular cases, <u>Roe v. City & County of San Francisco</u>, 109 F.3d 578, 583-84 (9th Cir. 1997), and gathering evidence to present to the trier of fact, as opposed to gathering evidence to determine whether probable cause exists to arrest, <u>Broam v. Bogan</u>, 320 F.3d 1023, 1033 (9th Cir. 2003).

By contrast, a prosecutor is shielded only by qualified immunity --not absolute immunity-- when "advising police officers during the investigative phase of a criminal case, performing acts which are generally considered functions of the police, acting prior to having probable cause to arrest, or making statements to the public concerning criminal proceedings." <u>Botello v. Gammick</u>, 413 F.3d 971, 976-77 (9th Cir. 2005). <u>See also</u> <u>Goldstein v. City of Long Beach</u>, ___ F.3d ___, 2007 WL 914228 (9th Cir. March 28, 2007) (summarizing caselaw applicable to prosecutorial immunity).

Any out-of-court statements Sanchez made to the media (paragraphs 44 and 45 of the Complaint) are outside the scope of prosecutorial immunity. <u>See</u> <u>Buckley</u>, 509 U.S. at 277. The Complaint doesn't expressly say these statements were made out-

Page 5 -- OPINION AND ORDER

of-court. They may have been statements made during a court proceeding and reported by the media, which would be shielded by prosecutorial immunity.[1] On a motion to dismiss, however, a plaintiff is given the benefit of the doubt. Defendant Sanchez can clarify this issue during discovery, and renew his argument, if appropriate, on summary judgment.

The decision to prosecute Plaintiff (paragraphs 51, 55, 56) is squarely within the ambit of prosecutorial immunity, even assuming Plaintiff was charged with the wrong statute, or acquitted, or that deputy district attorney Sanchez acted maliciously in bringing charges. Those allegations against Sanchez are dismissed.

Whether Sanchez concealed exculpatory materials, and failed to provide them to Dillard during discovery in the criminal case, is a matter "intimately associated with the judicial phase of the criminal process," and is shielded by prosecutorial absolute immunity. Cf. Imbler, 424 U.S. at 416, 431 n.34 (prosecutor's "deliberate withholding of exculpatory information" shielded by absolute immunity). Those contentions in Paragraph 54 of the Complaint are dismissed as to defendant Sanchez.

Paragraph 58 concerns various events during Dillard's trial that are within the scope of prosecutorial immunity. The allegations of Paragraph 49 (prosecutor's decision to grant immunity to a witness in return for providing testimony) are likewise barred by prosecutorial immunity, regardless of whether that action was motivated by animus towards Dillard.

---

[1] With limited exceptions, such a statement also is privileged under state law, both as to the speaker and a newspaper accurately reporting the statement. See Irwin v. Ashurst, 158 Or. 61, 66-69 (1938); Israel v. Portland News Pub. Co., 152 Or. 225 (1936).

Page 6 -- OPINION AND ORDER

On this record, the court has insufficient information to evaluate whether the allegations in Paragraphs 46 to 48, and 52 to 53 --concerning alleged improprieties during out-of-court interrogation of witnesses-- are within the scope of prosecutorial immunity. Cf. Genzler v. Longanbach, 410 F.3d 630 (9th Cir. 2005) (discussing the applicable legal standards). The motion is denied as to those items, but may be renewed at summary judgment, with a fuller record.

B.  **Eleventh Amendment**

Defendant Sanchez contends all claims against him are barred by the Eleventh Amendment. With regard to the § 1983 claims, his argument confuses the terms "individual capacity" and "official capacity." The question is not, as Sanchez contends, whether he was acting within the scope of his employment, *i.e.*, the capacity in which Sanchez allegedly inflicted the injury. Rather, the issue is the capacity in which Sanchez is being sued. See Hafer v. Melo, 502 U.S. 21, 26 (1991).[2] The § 1983 claims against Sanchez, in his individual capacity, are not barred by the Eleventh Amendment. Id. The cases Sanchez cites lend no support to his argument. For example, in Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 (9th Cir. 1994), which Sanchez cites, the court held that the § 1983 claims against the individual defendants were not barred by the Eleventh Amendment, and specifically discussed the distinction between individual and official capacity claims.

---

2  This distinction has repeatedly been pointed out to the Attorney General by the judges of this court, yet the Attorney General continues to ignore it. See, e.g., Murphy v. Kitzhaber, CV 05-1191-CO (D. Or. Aug. 17, 2006); Dauven v. Oregon, CV 01-173-JE (D. Or. May 18, 2001). If this pattern persists, sanctions may be in order.

The state law claims are a different matter. To the extent the state law claims against Sanchez are for torts allegedly committed in the scope of his employment,[3] those claims are barred by sovereign immunity unless such immunity has been waived by the State. Oregon has enacted a limited waiver of sovereign immunity, subject to the provisions of the Oregon Tort Claims Act, ORS 30.260 to 30.300 ("OTCA"). Contrary to the contentions in Plaintiff's brief, the OTCA applies to state law claims against state and local government officials in Oregon, regardless of whether the action was commenced in state or federal court.

The OTCA requires that the State be substituted as the defendant in place of the individual employee. ORS 30.265(1). Enactment of the OTCA did not waive Oregon's privileges[4] under the Eleventh Amendment. Estate of Pond v. Oregon, 322 F. Supp.

---

[3] Plaintiff's brief miscomprehends this concept. In deciding whether a claim is within the scope of the Oregon Tort Claims Act, the court (or if necessary, a jury) examines the facts. The inquiry is not circumscribed by a Plaintiff's conclusory assertion that the activities were outside the scope of the employee's duties. See Center for Legal Studies, Inc. v. Lindley, 64 F. Supp. 2d 970, 975 (D. Or. 1999). Plaintiff also misunderstands ORS 30.285(3). The exception Plaintiff cites is not applicable unless the Attorney General makes certain findings. That did not occur here. See also ORS 30.285(6) (discussing effect of such a finding by the Attorney General).

[4] Sanchez mistakenly characterizes the Eleventh Amendment as depriving a court of subject matter jurisdiction. See Hill v. Blind Industries and Services of Maryland, 179 F.3d 754, 760 (9th Cir. 1999), amended, 201 F.3d 1186 (2000) (disagreeing with that characterization). Sanchez also argues that a timely tort claim notice is a condition precedent to a court having "jurisdiction," citing Urban Renewal Agency v. Lackey, 275 Or. 35, 40 n.4 (1976). Lackey noted some intermediate court decisions had reached such a conclusion, but that it seemed at odds with decisions holding that substantial compliance with the notice requirement is sufficient. Id. This "jurisdictional" argument remains unresolved. See, e.g., Comcast II of Oregon, Inc. v. City of Eugene, ___ Or. App. ___ n.4, 2007 WL 914675 (March 28, 2007).

Page 8 -- OPINION AND ORDER

2d 1161, 1165 (D. Or. 2004). Oregon has timely objected to these claims being heard in federal court. The end result is that any state law claims against Defendant Sanchez, that come within the scope of claims covered by the Oregon Tort Claims Act, must be dismissed without prejudice to Plaintiff's right to pursue those claims in state court.[5]

Factors to consider, in analyzing whether conduct was within the scope of employment for purposes of ORS 30.265(1) include: whether the conduct was of the kind the defendant was hired to perform, if it occurred within an "authorized time and space," and whether the defendant was "motivated, at least in part, by a purpose to serve the employer." Brungardt v. Barton, 69 Or. App. 440, 443 (1984).

It is not easy to tell precisely what state law claims Plaintiff is alleging against Sanchez. The Complaint includes a laundry list of legal theories in the caption, yet never says which claims are alleged against which defendants. Nor, except for § 1983, does the Complaint cite a specific statute that a defendant allegedly violated. Some theories listed as causes of action in the caption do not correlate with any recognized cause of action in this state. Other items on the list are redundant.

Without a better explanation of what claims are being pled against which defendants, and for what conduct, the court cannot determine whether the state law claims against Sanchez concern acts or omissions within the scope of his employment. The court therefore will require Plaintiff to file an Amended Complaint

---

[5] Such claims almost certainly will be dismissed by the state court unless Plaintiff either timely complied with the notice requirements of the Tort Claims Act, as to these claims, or else commenced this action within the 180 day period established by ORS 30.275(2)(b), as per ORS 30.275(3)(c).

stating, more clearly, what claims are alleged against each defendant, and for what acts or omissions.

An Amended Complaint replaces the prior pleading, and must be complete in itself. In other words, Plaintiff cannot file a document containing only the revisions or proposed additional language. Rather, Plaintiff must also re-allege any factual assertions he wishes to retain from the original Complaint, along with any exhibits that were attached to that document, so the reader need look no further than the Amended Complaint to obtain the full text of Plaintiff's claims. Plaintiff should organize the Amended Complaint by claim, *e.g.*, "First Claim for Relief (Against Defendant Sanchez)," so the parties and court can readily identify and discuss each claim separately.

Defendant Sanchez may renew his motion to dismiss the state law claims after the Amended Complaint is filed.

### *Motion to Dismiss by Defendant Courier Newspaper Company*

    **A.   Claim Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 furnishes a cause of action only against those who act under "color of state law." The typical § 1983 defendant is a public official who allegedly abuses the position given to him by the State. <u>West v. Atkins</u>, 487 U.S. 42, 49-50 (1988). In some limited circumstances, a private actor may be held liable under § 1983. <u>Id.</u>; <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838-43 (1982) (reviewing prior cases).

A private person may act "under color of state law" by engaging in a conspiracy with state officials to deprive the plaintiff of rights secured by federal law or the United States

Constitution.[6] A private person may also act "under color of state law" by being a willful participant in joint action with the State or its agents, or exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.[7]

The Complaint fails to allege facts --as opposed to conclusory allegations-- stating a legally cognizable § 1983 claim against the Courier Publishing Company. In his brief opposing the motion, Plaintiff represents that he can plead additional facts that will be sufficient to establish a conspiracy theory. At this point, I cannot entirely exclude the possibility that he could plead such a claim. I therefore dismiss any § 1983 claim against the Courier Publishing Company, in the present Complaint, with leave to replead that claim.

---

[6] Cf. Tower v. Glover, 467 U.S. 914, 920 (1984) (public defenders conspiring with state officials to deprive plaintiff of fair trial); Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) (private parties conspiring with bribed judge to issue official orders under color of state law); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (restaurant employee conspiring with police officer to deny service to, and then procure the arrest of, white teacher who accompanied black patrons into restaurant); United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539 (9th Cir. 1989) (en banc) (principal employer in small town, who allegedly conspired with local police department to arrest strikers in order to assist employer to prevail over union in strike, was subject to § 1983 action).

[7] Cf. West, 487 U.S. at 49-52 (private physician under contract with the state to provide orthopedic services at state-prison hospital was acting under color of state law when he treated inmate); Edmondson v. Leesville Concrete Co., 500 U.S. 614, 622-23 (1991) (exercise of race-based peremptory challenges in civil action); Goichman v. Rheuban Motors, Inc., 682 F.2d 1320 (9th Cir. 1982) (private towing company that towed vehicle at behest of state police officer for sole purpose of enforcing statute providing for towing of illegally parked vehicles was subject to § 1983 action); When is Eviction of Tenant by Private Landlord Conducted "Under Color of State Law" for Purposes of 42 USC § 1983, 73 A.L.R. Fed. 78 (1985).

Page 11 -- OPINION AND ORDER

B.  Defamation

The Courier Publishing Company contends the court lacks subject matter jurisdiction over the defamation claim.  I disagree.  When a Complaint contains at least one claim over which the court has original jurisdiction, 28 U.S.C. § 1367 authorizes the exercise of supplemental jurisdiction--including what formerly was known as pendent party jurisdiction--"over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . . "  This court has original jurisdiction over the § 1983 claims against at least four defendants, and perhaps even a § 1983 claim against the Courier Publishing Company if Plaintiff successfully repleads that claim.

The Courier Publishing Company also moves to dismiss on the ground that the statements it published regarding Plaintiff were true.  Maybe so, but that argument will not carry the day on a Rule 12 motion, particularly when the Plaintiff disputes those contentions.

In analyzing these motions, the court was hindered by the lack of detail in the Complaint, particularly in regard to the defamation claim.  Ordinarily, defamation claims must be pled with greater specificity.  In his Amended Complaint, Plaintiff must clearly state the following:

1.  Who he contends defamed him;

2.  The precise statement(s) he contends were defamatory;

3.  Whether the statement at issue was made during a court proceeding or in a document filed with a court;

4.  The precise date(s), or if not known an approximate date, the statement(s) were published; and

5. The date(s) (either actual or approximate) when the Plaintiff learned that each of these statements had been published.

## Conclusion

The motion (docket # 12) to dismiss by Defendant Sanchez is granted in part and denied in part, as stated above. Plaintiff has until April 27, 2007, to file an Amended Complaint. The motion (docket # 13) to dismiss by Defendant Courier Publishing Company is granted as to the § 1983 claim, with leave for Plaintiff to replead, and otherwise denied.

IT IS SO ORDERED.

DATED this ___5___ day of April, 2007.

_____
OWEN M. PANNER
UNITED STATES DISTRICT JUDGE