FILED'08 FEB 22 16:43USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| C. GORDON DILLARD, | ) | CV 06-3095-PA |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL SANCHEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PANNER, Judge.**

Plaintiff Gordon Dillard brings this action, *pro se*, against defendants Michael Sanchez, Jeffrey Gaunt, Jim Brissette, the City of Grants Pass and the city's Police Department, and the Courier Publishing Company, publisher of the Grants Pass Courier newspaper.  All defendants have moved for summary judgment.

### Allegations of Amended Complaint

This section summarizes Dillard's allegations, many of which are disputed by defendants. Plaintiff Dillard[1] was co-owner of a motel, restaurant and bar in Grants Pass, Oregon.  Defendant Gaunt, a Grants Pass police officer, demanded that Dillard stop renting rooms to low income people, raise room rates, eliminate

---

1  The Amended Complaint states that two companies owned the lease and the businesses, and Dillard owned an interest in those companies.  Defendants have not disputed whether Dillard is a proper plaintiff to maintain certain claims or to seek compensation for harm to the businesses.

weekly rentals, require credit cards from all customers, and take other steps to prevent individuals residing in the area from renting a room. Gaunt warned that if Dillard didn't comply, Gaunt would find an excuse to shut down the motel.

Dillard refused to comply. Gaunt then sought to pressure several teenage girls into saying Dillard offered them money for sex. Gaunt also offered to drop drug charges against the girls if they gave false testimony against Dillard. Gaunt wrote false accounts of the girls' statements to police. Gaunt told one of the girls the statement would be used to close Dillard's motel.

The girls signed affidavits denying they had sex with Dillard, or made certain statements to Gaunt. The police then coerced the girls into recanting their affidavits, and falsely testifying that Dillard had paid them for signing the affidavits.

Dillard notified top city officials about the misconduct of the police officers, but the City failed to take any action.

Defendant Brissette, a Grants Pass police officer, obtained a search warrant for Dillard's home, business and automobile by furnishing information Brissette knew, or should have known, was false. Dillard also alleges additional warrantless searches, seizures that exceeded the scope of search warrants, and that a tracking device was affixed to his vehicle without a warrant.

The police chief of Grants Pass arranged for the Grants Pass Daily Courier newspaper to be given a sealed list of items seized during an illegal search of Dillard's property. The newspaper and a radio station ran stories, based on information provided by the police, stating Dillard was implicated in drug and prostitution rings and was a pimp. The allegations were republished by other media outlets. The Grants Pass police

department circulated posters stating Dillard was wanted for rape and drug crimes, and extremely dangerous.

Brissette and Defendant Sanchez, a deputy district attorney, jailed one of the girls and told her she would not be released until she agreed to testify falsely against Dillard. After weeks in jail, she agreed. Sanchez and Brissette then had Dillard indicted for rape and prostitution. Sanchez and Brissette withheld, from the defense, police reports showing the girl had repeatedly denied the allegations regarding Dillard. The state court refused to appoint an attorney to represent Dillard, and he was forced to represent himself at trial. Sanchez also had Dillard arrested hours before the trial commenced, to disrupt his ability to present a defense, and insisted on bail being set so high that Dillard was unable to post it.

Dillard was acquitted on six counts, but convicted on two counts. The convictions are presently on appeal.

The Grants Pass Courier newspaper published a story stating Dillard admitted having sex with an underage girl. Dillard denied it and demanded a retraction. Instead, the paper ran a story repeating the allegations, along with defamatory statements by deputy district attorney Sanchez.

The officers tried to entrap Dillard into offering money to witnesses in return for false testimony. Dillard hired an attorney to represent one of the girls. Sanchez subsequently had Dillard indicted on charges of witness tampering for a statement Dillard made to that attorney. Dillard was convicted on one of the three counts. His appeal is pending.

A year after a motel computer was seized by the police, Brissette searched the computer again, without a warrant. Based

on the results of that new search, Dillard was indicted on 27
counts of possessing child pornography.  He is awaiting trial.
Dillard complains about prison conditions and gang activity.

Dillard seeks compensatory and punitive damages.  He wants
defendant Gaunt fired, and declared guilty of extortion and
coercion.  Dillard also wants this court to release him on bail.

### Legal Standards

Summary judgment will be granted if there are no genuine
issues of material fact and the moving party is entitled to
judgment as a matter of law.  Fed R. Civ. P. 56(c).  A material
fact is one that may affect the outcome.  See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment may be
granted, despite the presence of factual disputes between the
parties, if the resolution of those disputes could not change the
final result.  Id.  See also Brunet, Redish, & Reiter, SUMMARY
JUDGMENT: FEDERAL LAW AND PRACTICE § 6.04 (2d ed. 2000).

When a defendant moves for summary judgment, the plaintiff
may not simply rest on his pleadings, but must produce evidence
sufficient to permit a jury to return a verdict in his favor.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The
evidence, and reasonable inferences that may be drawn from it,
must be viewed in the light most favorable to the non-moving
party.  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d
1252, 1257 (9th Cir. 2001).

### Discussion

### Motion for Summary Judgment by Defendant Sanchez

I previously determined that Sanchez enjoys absolute
immunity for certain actions, including his (1) decision to
prosecute Dillard, (2) alleged concealment of exculpatory

materials during discovery, and (3) decision to grant immunity to
certain witnesses in exchange for their testimony.

Dillard contends Sanchez improperly coerced witnesses into
giving false testimony before the grand jury and at trial.
Dillard offers no proof this occurred. Dillard's belief that it
happened, without more, is not sufficient to survive a motion for
summary judgment. In addition, Sanchez is absolutely immune for
his actions in preparing a witness to testify before the grand
jury or at trial. Such conduct was "intimately associated with
the judicial phase of the criminal process," Imbler v. Pachtman,
424 U.S. 409, 430 (1976), and occurred in his role as an advocate
for the State, Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Dillard complains that Sanchez argued in favor of a high
bail, and this resulted in Dillard having to litigate his
criminal case from a prison cell. This claim fails for a number
of reasons, but one will suffice. Arguments made by a prosecutor
at a bail hearing are cloaked by absolute immunity.
Prosecutorial immunity also bars the court from considering
Dillard's assertion that "Sanchez improperly imposed conditions:
high risk offender conditions, by perpetrating, a fraud upon the
court." Arguing for a particular sentence or post-conviction
condition is within the traditional role of the prosecutor.

Dillard is upset about statements Sanchez made to the media.
I previously determined that any in-court statements by Sanchez
were absolutely privileged. Out-of-court statements are a
different matter. A prosecutor acts at his own peril if he
elects to try a case in the newspapers instead of in the
courtroom. See Buckley, 509 U.S. at 277.

/ / / /

Dillard has not provided the court with the particular statements made by Sanchez that Dillard contends were defamatory. Sanchez has submitted one article. It concerned Dillard's sentencing hearing. The statements attributed to Sanchez in that article are within the bounds of permissible speech, given the role of Sanchez in those proceedings, the verdict of the jury, the testimony at the criminal trial, and the sentence imposed by the state court.

Dillard's opposition to summary judgment states that "[t]here are other[] [articles] not yet in evidence." Dillard was responsible for placing in evidence any articles he wanted the court to consider. He has not done so. The court cannot consider evidence that Dillard never submitted.

Dillard now requests an opportunity for discovery. Dillard had the opportunity to conduct discovery during the months after he commenced this action, using the procedures available to him under the Federal Rules of Civil Procedure. He failed to do so. It is too late now.

Dillard argues that the jury verdict was wrong, the trial was unfair, the witnesses against him lied, and the statutes he was convicted of violating are unconstitutionally vague. Those allegations must be addressed, if at all, in Dillard's appeal from his conviction. It cannot be addressed in this proceeding.

Defendant Sanchez is entitled to summary judgment.

**Motion for Summary Judgment by Courier Publishing Company**

In the Opinion and Order regarding the motion to dismiss, the court required Dillard to replead his claim against the Courier Publishing Company with greater specificity:

In his Amended Complaint, Plaintiff must clearly state
the following:

1.    Who he contends defamed him;

2.    The precise statement(s) he contends were
      defamatory;

3.    Whether the statement at issue was made during a
      court proceeding or in a document filed with a
      court;

4.    The precise date(s), or if not known an
      approximate date, the statement(s) were
      published; and

5.    The date(s) (either actual or approximate)
      when the Plaintiff learned that each of these
      statements had been published.

Opinion and Order (April 5, 2007).

    Dillard's Amended Complaint lacks these critical details.
In evaluating the summary judgment motion, the court has little
information concerning the specific statements Dillard contends
were defamatory, the circumstances in which the statements were
made, and whether Dillard's claim was commenced within the one
year period Oregon law allows for filing a defamation action.

    A few statements and articles are scattered in the record.
These mostly either summarize the trial testimony, recount events
of record (such as an indictment, conviction, arrest, or the
return on a search warrant), or quote statements made by the
police or prosecutor.  The Courier is not liable for accurately
reporting such events.  That is true even if the testimony is
alleged to have been false, the indictment unfounded, the
conviction wrongful, the search exceeded the scope of the
warrant, or the police issued false statements.  The newspaper

was merely reporting what transpired or what was said by a public official regarding matters of public concern.

Dillard disputes the accuracy of one item in particular. Several articles published by the Courier stated that Dillard admitted having sex with one girl on a single occasion, but insisted it was before he knew her true age. At Dillard's trial, the girl testified they had sex twice. Dillard then testified:

> I told her that I was very attracted to her and I told her to come back anytime. . . . [T]he next thing I know, Kendall knocks on my door one evening . . . . And she comes in and in short order, she slipped out of her clothes and was standing there totally nude. And then, laid down on the bed.
>
> And then, about 15 minutes later we went to Elmer's and had dinner.

Dillard denies this was an admission he had sex with her:

> Dillard submits to this court that an admission that a girl was nude on your bed is not an admission of having sexual intercourse with the girl. And that it is possible to have a nude girl in close proximity ready and willing to have sex and yet not lay even a hand on her, which is exactly what happened . . . . [T]hat she came over intending to have sex and made it abundantly clear that she wanted to by stripping off her cloths (sic) does not automatically prove that she was successful in having sex.
>
> When she stripped off her cloths (sic) I liked what I saw and I probably would have had sex with her -- except she told me that I should use a condom because she said that she had hepatitus (sic) C.

Plaintiff's Sworn Opposition to Motion for Summary Judgment by Defendant the Courier Publishing Company, pp. 2-3.

At his trial, Dillard also stated in closing argument:

> [W]as I trying to groom her for a sexual purpose?
> I think so.  Probably yes.  I was -- I would admit
> to that.  But I think it was for a noble purpose.

Dillard told the jury his plan was to have children with the girl as soon as she turned 18.  Dillard also stated:

> [T]he one instance that -- that I -- the night
> that I took Kendall to dinner over at the -- at
> Elmer's I got snookered into that.  Now, I could
> have been more careful . . . . * * * And then, --
> other than the one instance that -- the Elmer's
> night instance, that there's no -- there's no sex
> in this either.  I mean, the -- I found the girls
> fascinating.  As -- just kind of as a -- a social
> experiment.  I enjoyed talking to them.  The --
> and I found their -- their morality and their
> attitudes on everything interesting.  I mean, from
> a kind of a social experiment kind of basis.

The Courier's characterization of Dillard's statements was not so unreasonable as to give rise to liability.  Nor, given the statements Dillard has admitted making --coupled with the girl's testimony and his conviction for engaging in a sexual act with her for money-- was the Courier article likely to cause further harm to Dillard's reputation.

Viewed in the light most favorable to Dillard, a jury might infer that the Courier chose to emphasize events and statements portraying Dillard in an unfavorable light, while giving less coverage to events and statements favoring Dillard.  Without more, that is insufficient to permit a jury to return a verdict in favor of Dillard.

The record also lacks evidence from which a jury could find that the police and the Courier Publishing Company conspired with each other to violate Dillard's constitutional rights.

The Courier Publishing Company is entitled to summary judgment.

**Motion for Summary Judgment by Grants Pass Defendants**

Several arguments asserted by Grants Pass defendants misstate the applicable law.  If a police officer knowingly or recklessly offers material false evidence to procure a search warrant or arrest warrant, it is no defense that a judge signed the warrant.  The officer may still be liable.  See Burke v. Town of Walpole, 405 F.3d 66, 81-86 (1st Cir. 2005).  Nor is it a complete defense that one officer made the false statements, while a second police officer executed the warrant.  Id. at 86.

Other arguments by the Grants Pass defendants are similarly flawed.  Cf. Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004) ("presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings"); Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) (probable cause determination by magistrate does not bar claim against defendant who deliberately or recklessly misstates or omits facts material to the existence of probable cause).

Defendants rely on testimony by a witness who recanted her earlier sworn affidavit accusing Officer Gaunt of fabricating statements he had attributed to her.  Whether the witness told the truth in her affidavit, or at trial when she recanted, is a factual dispute that cannot be resolved on summary judgment.

/ / / /

Defendants' qualified immunity argument also fails.  If they really did many of the things Dillard contends they did, they certainly should have known it was wrong.

Whether Dillard can prove they did those things is another matter.  In addition, when Officer Brissette applied for the original search warrant, he wisely attached to his application affidavits from four individuals denying they had sex with Dillard or had made certain statements to Officer Gaunt.  The judge who issued the search warrant was thus aware of these affidavits, and knew the integrity of Gaunt's report had been questioned.  The judge also was aware of subsequent statements partly recanting those affidavits, and indicating that Dillard paid them for executing those documents.  The judge had the benefit of that information in evaluating the totality of the evidence and making his probable cause determination.

Whether Gaunt and Brissette withheld or misstated other information, and whether it fatally tainted the warrant, is a matter I decline to reach.  Two appeals from Dillard's convictions are pending in state court.  Dillard also reportedly has a pending 27-count state court indictment.  Any ruling this court makes regarding the validity of the search warrant may significantly impact those state court proceedings.

Dillard correctly notes that Heck v. Humphrey applies only when a "judgment in favor of the plaintiff [in the civil action] would necessarily imply the invalidity of his conviction or sentence."  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  He suggests there are many matters the court could address in this proceeding that do not implicate his convictions and sentence. For instance, Dillard argues, a finding that Officer Gaunt's

report contained statements that Gaunt falsely attributed to
Knowlton (*e.g.*, that she had sex with Dillard on two occasions)
does not preclude the possibility that Knowlton actually did have
sex with Dillard, yet did not provide that information to Gaunt,
as he had claimed in his report. Moreover, Dillard was acquitted
on the charges involving Knowlton, so there is no conviction that
might be undermined.

The problem with Dillard's argument is that these events
cannot be viewed in isolation. If Gaunt lied in his report, that
could call into question the validity of the first search
warrant. If that warrant is invalidated, subsequent warrants and
statements might be subject to suppression as fruit of the poison
tree. The same is true with regard to allegations that the
officers exceeded the scope of the warrant. Matters such as this
ordinarily would be litigated during the criminal proceeding.[2]

The computer at the center of the pending indictment was
originally seized pursuant to the first warrant. Cf. Harvey v.
Waldron, 210 F.3d 1008, 1015 (9th Cir. 2000) (§ 1983 action
alleging illegal search and seizure of evidence upon which
criminal charges are based does not accrue until the criminal
charges have been dismissed or conviction has been overturned).

Plaintiff also must show some injury to him that resulted
from false statements Gaunt allegedly made in his report. The
statements, by themself, caused no harm to Dillard, so the injury
requirement necessarily implicates the events that followed.

/ / / /

———————————————

2  No party furnished the court with a copy of the appellate
briefs, or detailed information regarding the criminal
proceedings. Defendants did supply some transcripts, but only
selected pages they considered adverse to Dillard.

The same is true of allegations that Gaunt and Brissette improperly pressured witnesses into giving false testimony. While Dillard was acquitted of some charges, they were closely related to the charges on which he was convicted.

About the only matter the court may consider--since it could not affect the validity of the judgment and sentence--is Dillard's assertion that Grants Pass police leaked confidential information to the press that had been sealed by a judge.

There are many circumstances where it is appropriate for the police to provide information to the media. Settling scores is not one of them. Nor is it appropriate to leak information to the media simply to titillate viewers, or curry favor with the media. Leaking sealed materials is of particular concern.

However, Dillard has not presented sufficient evidence that the police department leaked sealed materials to the media. Dillard focuses on the search warrant return, but has not shown that document was under seal when it was disseminated. Dillard assumes it was the police who furnished the information to the media, but offers no proof. The police are not the only persons with access to those documents. In addition, Dillard must prove damages, but he has not shown the materials were sealed for his protection, rather than to protect the investigation. Furthermore, if the materials would have been unsealed soon anyway, and made public, it is unclear how Dillard was damaged.

The Grants Pass defendants are entitled to summary judgment on the allegation that they leaked sealed materials to the media. The remaining claims against them are dismissed without

/ / / /

prejudice, pursuant to <u>Heck v. Humphrey</u>.[3]

**Other Matters**

Dillard complains about prison conditions, and asks the court to order his release on bail. Those matters are not part of this case. These defendants do not operate the prison, nor does this court set bail in state criminal proceedings.

### Conclusion

The motions for summary judgment by defendants Sanchez (# 71) and Courier Publishing Company (# 64) are granted. The motion (# 36) for summary judgment by defendants Gaunt, Brissette, City of Grants Pass, and Grants Pass Police Department, is granted as to the allegation that they leaked sealed materials to the media. The remaining claims against those defendants are dismissed, without prejudice, pursuant to <u>Heck v. Humphrey</u>, with the limitations period tolled until such claims ripen.

IT IS SO ORDERED.

DATED this _____ day of February, 2008.


OWEN M. PANNER
UNITED STATES DISTRICT JUDGE

---

3  Until recently, the rule was that claims barred by <u>Heck</u> are not ripe until the criminal conviction is vacated. <u>See</u> <u>Harvey</u>, 210 F.3d at 1015. A recent Supreme Court decision greatly confuses the law by requiring that claims be filed long before they ripen. <u>See</u> <u>Wallace v. Kato</u>, ___ U.S. ___, 127 S. Ct. 1091 (2007). The only plausible way to apply <u>Wallace</u> is to require that the claims be filed, but then dismiss them without prejudice and toll the limitations period until the claims ripen.